IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARY STADT, )
)
       Plaintiff, )
)
vs. ) No. 03 C 3059
)
UNITED CENTER JOINT VENTURE, )
an Illinois partnership, CHICAGO )
BLACKHAWKS HOCKEY TEAM, )
INC., a Delaware corporation, AT )
YOUR SERVICE, LLC, an Illinois )
Limited Liability Company, and UNITED )
MAINTENANCE COMPANY, INC., )
an Illinois corporation, )
)
       Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Stadt brought this action against defendants United Center Joint Venture, Chicago Blackhawks Hockey Team, Inc., At Your Service, LLC, and United Maintenance Company, Inc., and alleges that their negligence caused him to slip and fall on a liquid substance and sustain injuries. Defendants have moved for summary judgment and argue that they are not responsible for plaintiff's accident because they lacked notice of the spill. Defendants Blackhawks and United Maintenance also contend that they cannot be liable because they are neither owners nor landlords of the United Center. For the following reasons, the motion for summary judgment is denied.

## BACKGROUND

The following factual background is based on the parties' Local Rule 56 statements. On January 5, 2003, plaintiff, a resident of Grand Rapids, Michigan, attended a Chicago

Blackhawks hockey game at the United Center in Chicago, and watched the Blackhawks play their rivals, the Detroit Red Wings. Another couple from Grand Rapids, Brian and Michelle Sulak, joined plaintiff and his wife in the stands, and together they sat near the top of the third, and final, tier of seats in the stadium. Located approximately two rows behind the group's seats is a standing-room-only section that is used for sold-out events, such as the game plaintiff attended.

Plaintiff remained in his seat for the entire game, which included an overtime period. After the game ended, the group waited several minutes for the exiting crowd to thin down, and then decided to leave, walking through the standing-room-only section. That section was crowded with people walking in both directions, and the density of the crowd slowed the pace of egress. Plaintiff, who wears a prosthesis below his left knee, testified that he saw the floor was wet and decided to walk next to a wall, on which he placed his hand as he walked (plf. dep. at 29-30, 32). Despite this caution, before leaving the standing-room-only section, plaintiff's left foot slipped out from under him and he fell to the ground. While he was on the ground, plaintiff claims that he saw that the floor was wet with a liquid substance that wetted his hands and pants.

After Brian Sulak assisted in carrying plaintiff to section 307, he noticed that the area where plaintiff had fallen was wet (Sulak dep. 48). Marcus Lewis, formerly employed by defendant At Your Service as a guest service representative (GSR), arrived to provide assistance. Lewis inspected the area where plaintiff fell and saw a puddle of liquid measuring approximately 3 feet in diameter. Lewis identified the substance as beer, and also observed a United Center beer cup next to the puddle (Lewis dep. 29-30). In an incident report that Lewis filed, he wrote: "A guy was walking on the Standing Room concourse and slipped and

fell and hurt his knee. Note: It was beer on the ground and very slippery." Lewis radioed for paramedic assistance and plaintiff was eventually taken to a hospital in Chicago. Later that same night, plaintiff traveled back to Grand Rapids, where he received additional medical treatment, including surgery.

## DISCUSSION

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We do not make credibility determinations or weigh evidence when ruling on a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Our task is to "decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. We will grant a summary judgment motion when the evidence in the record shows that no dispute exists, or that the evidence brought by the nonmoving party is not sufficiently probative because it is only colorable as opposed to material. Id. at 249-50; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We review the evidence in the light most favorable to defendant, the nonmoving party. Payne v. Pauley, 337 F.3d 767, 770 (7th Cir 2003).

Defendants argue that they did not know of the spilled liquid on which plaintiff allegedly slipped and thus cannot be liable for plaintiff's injuries. In response, plaintiff asserts that defendants knew that patrons were likely to spill beverages during games, especially at sold-out events, and particularly in the standing-room-only section. Plaintiff

further asserts that defendants received special training for responding to and cleaning spills. According to plaintiff, these facts establish that defendants had constructive notice of the spill and thus cannot escape liability.

Defendants owed plaintiff the duty to exercise reasonable care in maintaining the premises in a reasonably safe condition, Lane v. Hardee's Food Sys., 184 F.3d 705, 707 (7th Cir. 1999), and may be liable for the plaintiff's injuries if they (1) knew, or should have known, of the condition that plaintiff presents as an unreasonable risk of harm; (2) should have expected that plaintiff would not discover the danger; and (3) failed to exercise reasonable care to protect him from that danger. Lewis E. v. Spagnolo, 186 Ill.2d 198, 710 N.E.2d 798, 815, 238 Ill. Dec. 1 (Ill. 1999) (citing Restatement (Second) of Torts § 343 (1965)); *see also* Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1015-17 (7th Cir. 2000). Plaintiff does not allege that defendants, or any of their agents, spilled the liquid, so liability here turns on whether defendants had actual or constructive notice of the liquid's presence. Lane, 184 F.3d at 707; Dunlap v. Marshall Field & Co., 27 Ill. App. 3d 628, 327 N.E.2d 16, 19-20 (Ill. App. 1st Dist. 1975). Plaintiff does not argue that defendants actually knew about the liquid, so the issue narrows to constructive notice, which "can be established under Illinois law under two alternative theories: (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident." Culli v. Marathon Petroleum Co., 862 F.2d 119, 123 (7th Cir. 1988). Plaintiff cannot show when the spill occurred, which leaves him with the recurring incident theory.

That fans at a crowded sporting event may spill their beverages is not a great surprise. Add to that the fact that the sporting event is a hockey game played between rivals and that

beverages are, more often than not, beer, and spills are almost always to be expected. Indeed, defendant At Your Service trained its GSRs to inspect areas for spilled liquids (Lewis dep. 23; Troy Brown dep. 55). The spilling of liquids may thus be characterized as recurring incidents since patrons oftentimes spill drinks in the stadium, including the standing room only section where plaintiff fell.

But does the fact that drinks are frequently spilled in the United Center mean that defendants had constructive notice of the spill on which plaintiff allegedly slipped? A dangerous condition that frequently occurs may establish constructive notice because the recurrence of the condition provides opportunities to take measures and rectify or prevent the condition. For example, if the owner of a premises knows that pools of water frequently develop in front of an ice machine due to dispensed ice cubes that fall to the floor, he has constructive notice of a dangerous condition and thus has ample opportunities to patrol the area and mop up any water or ensure that no stray ice cubes hit the floor. Byrne v. United States, 2002 WL 433064, 2002 U.S. Dist. LEXIS 4658 (N.D. Ill. 2002). Similarly, an owner of a gas station is on notice that the area around the gas pumps may become slippery, creating a dangerous condition that should be addressed through inspection and maintenance. Culli, 862 F.2d at 126. And when the owner of a premises knows that during rainstorms a defective ceiling leads to puddles on a floor that business invitees traverse, he has constructive notice of the dangerous condition and can either fix the leaks or mop up the puddles. Barchard v. City of Chicago, 1993 WL 276726, 1993 US Dist LEXIS 10099 (N.D. Ill. 1993). As in these cases, defendants knew that spilled liquids frequently occurred and had opportunities to address those spills.

However, defendants' knowledge that spills occurred in the United Center does not

mean that it had constructive notice of every spill. Instead, defendants' procedures for responding to spills, and what steps they actually took, will determine if they should have known about the spill that allegedly caused plaintiff to fall. In Culli, the court noted that the recurring incident theory implicates the defendants' response to that incident: "A pattern or practice of a particular type of spill is not necessary. What is needed is a pattern of dangerous conditions which were not attended to within a reasonable time." *Id.* at 126. The defendant in Culli admitted that it failed to inspect the areas around the gas pumps, which was where the plaintiff fell, and the court concluded that the defendant's poor maintenance was unreasonable. Thus, ignoring defendants' response to the spills could make them liable for every spill and would turn defendant into an insurer of the safety of United Center attendees. To determine whether defendants should have known of the spill, we turn to their conduct.

According to Troy Brown, director of defendant At Your Service, 17 GSRs were normally assigned to the "300" level area, and they were positioned at every other hallway leading from the seating area to the concourse (Brown dep. 37, 39). During events, the GSRs roam in their assigned areas and are expected to be present before, during, and after each event (Brown dep. 41). They check tickets, help attendees with any requests or problems, and watch for any debris and spills (Roberts dep. 12). When there is a standing-room-only crowd, 14 additional GSRs are added to the crew in the "300" level (Brown dep. 43; Roberts dep. 21). With these added GSRs, the staffing numbers seem reasonable; it is, however, impossible to tell from the record how many GSRs were actually stationed in the standing-room-only section on January 5, 2003, and where they were at the end of the hockey game. Further, the fact that Marcus Lewis, who was stationed in sections 302-303, was the first GSR to arrive at section 307, where plaintiff was taken after he fell close to sections 305-306, is inconsistent with

defendants' assertion that there was extra coverage in the standing-room-only section. It would be improper to conclude that they did not have constructive notice of the spill that allegedly caused plaintiff to slip and fall. Material issues exist as to the reasonableness of defendants' conduct.

Defendant United Maintenance joined the summary judgment motion filed by its three co-defendants and did not submit any additional or supplemental argument. But it did file a reply in which it contends that plaintiff's arguments are irrelevant because they rely on cases involving landlords. That argument is without merit. Defendant United Maintenance cites Barchard v. City of Chicago, but ignores that one of the defendants in that case was United Airlines, who leased a terminal from the City of Chicago. Further, in response to defendants' arguments, plaintiff cites cases involving landlords, which are based on premises liability cases and principles. If defendant Untied Maintenance wanted to argue that it was not liable because it is neither landlord nor owner, then it should have done so through its own motion. And, as it stands, companies providing cleaning services may be liable for failing to keep areas clean and free of debris if accidents result from that negligence. *See* Gusich v. Metro. Pier & Exposition Auth., 326 Ill. App. 3d 1030, 762 N.E.2d 34, 260 Ill. Dec. 768 (Ill. App. 1st Dist. 2001).

Similarly, defendant Chicago Blackhawks contends that plaintiff has failed to show that it had constructive notice of the spill, and further argues that it only leased the premises for the purposes of playing a hockey game. That latter point may be true; however, even as a lessee, defendant Blackhawks may be responsible for certain areas of the United Center (*see* Barchard), and the extent of their contractual responsibility turns on the lease agreement, which presently is not before the court. Summary judgment for defendant Blackhawks is

therefore denied.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 9, 2005.